UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No.: 3:15-bk-02248-JAF
                                                                Chapter 11
Climate Control Mechanical Services, Inc.
                                                                (Jointly Administered with)
Base 3, LLC                                                     Case No.: 3:15-bk-02249-JAF
The Alexander Group, LLC                                        Case No.: 3:15-bk-02250-JAF
Facility Performance, LLC                                       Case No.: 3:15-bk-05021-JAF

                    Debtors.
_____/

Skanska USA Building Inc.,                                      Adv. Pro. No.:

        Plaintiff,

vs.

Climate Control Mechanical Services, Inc.,

        Defendant.
_____/

**COMPLAINT FOR DECLARATORY RELIEF**

        Plaintiff, SKANSKA USA BUILDING INC. ("Skanska"), through undersigned counsel and

pursuant to Federal Rule of Bankruptcy Procedure 7001, hereby sues CLIMATE CONTROL

MECHANICAL SERVICES, INC. ("Debtor"), and in support thereof states as follows:

**PARTIES, JURISDICTION, AND VENUE**

        1.      Skanska is a Delaware corporation authorized to do business in the State of Florida.

        2.      Debtor is a Florida corporation authorized to do business in the State of Florida.

        3.      Debtor filed a petition under Chapter 11 of the Bankruptcy Code on May 18, 2015

(the "Petition Date").

4.      The Court has jurisdiction under 28 U.S.C. § 1334 to hear this matter, which is a core proceeding pursuant to 28 U.S.C. § 157.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

6.      This is an adversary proceeding to obtain a declaratory judgment that: (1) the certain Subcontract Agreement (as defined below) entered into by and between Debtor and Skanska was validly terminated effective March 14, 2016, and is of no force and effect; (2) the automatic stay arising under 11 U.S.C. § 362 does not apply to the Subcontract Agreement; and (3) the Subcontract Agreement is not an executory contract subject to assumption or rejection under 11 U.S.C. § 365.

7.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 362, and 365, and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

8.      On or about August 14, 2014, Skanska entered into a contract with The University of Florida Board of Trustees to perform the construction and related work and services at the project commonly referred to as UF 322A Chemistry/Chemical Biology Building located at University of Florida, Building 0275, Gainesville, FL 32611 (the "Project").

9.      Thereafter, the Debtor submitted a bid proposal to perform a portion of the work required to complete the Project.  Specifically, the Debtor bid to complete the HVAC portion of the Project.

10.      The Debtor's bid proposal was ultimately selected as the winning bid.

11.      Shortly thereafter, the Debtor and Skanska began negotiations regarding the scope of work that the Debtor was to perform on the Project.  The parties' negotiations culminated in the parties executing a subcontract agreement (the "Subcontract Agreement") on May 19, 2015, one day after the Petition Date.  A true and correct copy of the cover page of the Subcontract Agreement,

along with Exhibits A, E, and N, are attached hereto as **Exhibit "A."** A copy of the complete agreement is available upon request.

12.     Although the Subcontract Agreement indicates an "effective date" of April 29, 2015, the Subcontract Agreement did not legally come into effect until the execution date of May 19, 2015.

13.     The April 29, 2015 "effective date" simply reflects the date on which Skanska had circulated a prior draft of the Subcontract Agreement to the Debtor for execution and has no significance under the Subcontract Agreement. Thereafter, upon review of the Subcontract Agreement, the Debtor requested material modifications to the Subcontract Agreement, as to scope of services and as to the contract price.  The scope of services to be provided by the Debtor under the Subcontract Agreement evolved after April 29, 2015.

14.     Indeed, at the request of Debtor, Skanska modified Exhibit A to the Subcontract Agreement on May 15, 2015 to reflect the revised scope of services. After making the modifications, Skanska circulated the revised Subcontract Agreement to the Debtor.

15.     Thereafter, on May 17, 2015, two days prior to executing the Subcontract Agreement, the Debtor reviewed the revised Subcontract Agreement in Skanska's electronic signature program. Although permitted to execute the Subcontract Agreement electronically at that time with a simple click, the Debtor instead elected to delay execution until May 19, 2015, one day after filing its bankruptcy petition.  Skanska executed the Subcontract Agreement on May 19, 2015, also.  A copy of the Docusign Certificate of Completion evidencing the dates on which the Subcontract Agreement was viewed and executed is attached hereto as **Exhibit "B."**

16.     Most importantly, the plain terms of the Subcontract Agreement evidence that it was not executed by either the Debtor or Skanska until May 19, 2015– one day after the Debtor filed its

petition under Chapter 11 of the Bankruptcy Code.

17.     The Subcontract Agreement constitutes a postpetition contract because it was not executed by the parties until after the Petition Date.

18.     The Debtor eventually defaulted under the Subcontract Agreement for, among other reasons, failing to comply with the original project schedule from March, 2015; failing to meet the requirements of certain recovery schedules; failing to provide adequate and/or qualified labor to complete its work in a timely manner; and failing to comply with safety requirements.

19.     On March 10, 2016, Skanska sent a forty-eight (48) hour default notice ("Default Notice") upon the Debtor in accordance with Section 12.1 of Exhibit "E" of the Subcontract Agreement.  Pursuant to the Default Notice and the Subcontract Agreement, the Debtor was provided forty-eight (48) hours from the date of receipt of the Default Notice to cure the specified deficiencies and defaults.  A copy of the Default Notice is attached hereto as **Exhibit "C."**

20.     The Debtor failed to cure the deficiencies and defaults set forth in the Default Notice. Accordingly, the Subcontract Agreement was terminated effective March 14, 2016, i.e., forty-eight (48) hours after the Debtor received the Default Notice.

21.     The Debtor contests the termination of the Subcontract Agreement, and has indicated that it will file a motion with this Court seeking approval to assume the Subcontract Agreement under 11 U.S.C. § 365.  The Debtor further posits that April 29–rather than the date of execution– controls whether the Subcontract Agreement is a postpetition or prepetition contract.

**COUNT I: DECLARATORY JUDGMENT THAT THE SUBCONTRACT AGREEMENT
HAS BEEN TERMINATED AND IS OF NO FORCE AND EFFECT**

22.     Skanska incorporates and realleges paragraphs 1 through 21 as if fully set forth

herein.

23.     An actual, ripe, and substantial justiciable controversy exists as to whether the Subcontract Agreement was terminated effective March 14, 2016.  Specifically, Skanska contends that the Subcontract Agreement was terminated in accordance with the Default Notice, and because Debtor failed to cure the enumerated defaults within forty-eight (48) hours of delivery of the Default Notice.  On the other hand, the Debtor contends that the Subcontract Agreement remains in effect, and that the termination of the Subcontract Agreement was wrongful and invalid.  The Debtor has failed or refused to recognize the effect of the termination of the Subcontract Agreement and has instead sought to assume the Subcontract Agreement.

24.     Accordingly, there is a bona fide and present need for a declaration that the Subcontract Agreement has been terminated and is no longer of any force and effect.

25.     In light of the facts and circumstances set forth herein, Skanska is in doubt as to its rights regarding the Subcontract Agreement, and whether the Subcontract Agreement remains in force and effect.

26.     All parties necessary to the resolution of the foregoing issues are presently before the court such that the relief sought is not merely the court giving legal advice, but instead resolving the controversy set forth herein.

27.     For the foregoing reasons, Skanska respectfully requests that this Court declare that the Subcontract Agreement was validly terminated effective March 14, 2016, and that the Subcontract Agreement is of no force and effect.

WHEREFORE, SKANSKA USA BUILDING INC., respectfully requests that this Court declare that (1) the Subcontract Agreement was terminated effective March 14, 2016, and is of no

further force and effect; and (2) grant such other and further relief as the Court deems just and proper.

### COUNT II: DECLARATORY JUDGMENT THAT THE SUBCONTRACT AGREEMENT IS NOT SUBJECT TO 11 U.S.C. § 362 AND NOT AN EXECUTORY CONTRACT SUBJECT TO ASSUMPTION AND REJECTION UNDER 11 U.S.C. § 365

28.     Skanska incorporates and realleges paragraphs 1 through 21 as if fully set forth herein.

29.     An actual, ripe, and substantial justiciable controversy exists as to whether the Subcontract Agreement is an executory contract subject to assumption or rejection under 11 U.S.C. § 365.

30.     The Subcontract Agreement was not of any legal force and effect until after it was executed by the parties on May 19, 2015.  As such, neither the Debtor nor Skanska owed one another any obligation to perform on the Petition Date**.**

31.     It is further clear that Debtor intended to delay execution and the effectiveness of the Subcontract Agreement until after the Petition Date.  The Debtor viewed the Subcontract Agreement on May 17, 2015, but elected not to execute at that time, as evidenced by Exhibit B.  Instead, the Debtor delayed execution until May 19, 2015, after the bankruptcy petition was filed.

32.     In light of the foregoing, and because the Subcontract Agreement was not executed until after the Petition Date, it does not constitute an executory contract subject to assumption or rejection under 11 U.S.C. § 365.  However, the Debtor alleges that the Subcontract Agreement is subject 11 U.S.C. § 365, and that the Debtor will file a motion with this Court seeking approval to assume the Subcontract Agreement.

33.     Accordingly, there is a bona fide and present need for a declaration that the

Subcontract Agreement is not an executory contract subject to assumption or rejection under 11 U.S.C. § 365.

34.     An actual, ripe, and substantial justiciable controversy also exists as to whether the automatic stay applies to the Subcontract Agreement.  Skanska contends that the Debtor did not gain a legal or equitable interest in the Subcontract Agreement until after the Petition Date; as such, the Subcontract Agreement does not constitute property of the estate and, in turn, is not subject to the automatic stay.  The Debtor disagrees with Skanska and has continued to aver that the Subcontract Agreement was–and continues to be–property of the bankruptcy estate subject to the automatic stay.

35.     Collectively, Sections 362 and 541 of the Bankruptcy Code provide that the filing of a voluntary bankruptcy petition operates as a stay over any act to exercise control over any legal or equitable interest of the debtor "as of the commencement of the case."

36.     In this instance, the Subcontract Agreement is not subject to the automatic stay because the Debtor did not gain a legal or equitable interest in the Subcontract Agreement until the execution date of May 19, 2015–after the commencement of the Debtor's bankruptcy case.  Stated differently, Debtor did not hold any legal or equitable interest in the Subcontract Agreement "as of the commencement of the bankruptcy case."  Therefore, the automatic stay does not apply to the Subcontract Agreement.

37.     Debtor disagrees with Skanska's position and has alleged that the Subcontract Agreement is in fact property of the bankruptcy estate and subject to the automatic stay.

38.     Based on the foregoing, there is a bona fide and present need for a declaration that the automatic stay arising under 11 U.S.C. § 362 does not apply to the Subcontract Agreement.

39.     All parties necessary to the resolution of the issues in Count II are presently before

the court such that the relief sought is not merely the court giving legal advice, but instead resolving the controversies set forth herein.

40.     In light of the facts and circumstances set forth in Count II, Skanska is in doubt as to whether the automatic stay under 11 U.S.C. § 362 applies to the Subcontract Agreement, and whether the Subcontract Agreement is an executory contract that is subject to assumption or rejection under 11 U.S.C. § 365.

41.     For the foregoing reasons, Skanska respectfully requests that this Court declare that the automatic stay arising under 11 U.S.C. § 362 does not apply to the Subcontract Agreement, and that the Subcontract Agreement is not an executory contract that the Debtor can reject or assume under 11 U.S.C. § 365.

WHEREFORE,  SKANSKA USA BUILDING INC., respectfully requests that this Court: (1) declare that the Subcontract Agreement is not subject to the provisions of 11 U.S.C. § 365; (2) declare that the automatic stay arising under 11 U.S.C. § 362 does not apply to the Subcontract Agreement; and (3) grant such other and further relief as the Court deems just and proper.

Dated April 20, 2016.

/s/ Ryan E. Davis
RYAN E. DAVIS
Florida Bar No. 0179851
rdavis@whww.com
JOSH A. RUBIN
jrubin@whww.com
Florida Bar No. 0114124
**WINDERWEEDLE, HAINES, WARD
  & WOODMAN, P.A.**
Post Office Box 1391
Orlando, FL 32802-1391
(407) 423-4246; (407) 423-7014 (facsimile)
Attorneys for Skanska USA Building Inc.